## NORTON *v.* DYERSBURG.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

No. 207.　Argued April 5, 1888. — Decided April 23, 1888.

In this case, certain negotiable bonds issued by the town of Dyersburg, Tennessee, were held to have been issued without lawful authority.

Certain provisions of the statutes of Tennessee considered and held not to confer power on the town of Dyersburg to issue the bonds in question.

The grant to a municipal corporation of the power to subscribe for stock in a railroad company does not carry with it the implied authority to issue negotiable bonds therefor; and such is the view of the Supreme Court of Tennessee.

In a suit at law against the town to recover on the bonds, no question growing out of the liability of the town for the subscription to the stock can be inquired into.

THE court stated the case as follows:

This is an action at law, brought in the Circuit Court of the United States for the Western District of Tennessee, by Extein Norton, a citizen of New York, against the mayor and aldermen of the town of Dyersburg, a municipal corporation created by the State of Tennessee, to recover sundry sums of money, as due for the principal of 36 bonds, for $500 each, and 58 bonds for $250 each, and 62 bonds for $100 each, all due May 10, 1883, and on sundry coupons cut from such bonds, due at various times between the date of the bonds and their maturity.

The bonds and coupons were in the following form :

" Bond No. — .                                              $250.

"The mayor and aldermen of the town of Dyersburg, in the State of Tennessee, a corporation duly chartered by act of the General Assembly of the State of Tennessee, by the qualified voters of said town, under the provisions of an act of Legislature empowering them so to do, by this bond promise to pay to the bearer hereof, ten years after the date hereof, the sum of two hundred and fifty dollars, with interest at seven per centum per annum from this date, payable semiannually, at the city hall in Dyersburg, on presentation of the coupons hereto attached, to aid in the construction of the Paducah and Memphis Railroad ; upon the express condition, however, that the said railroad shall be constructed to the town of Dyersburg, Tennessee, and have a depot of said railroad located within half a mile of the court-house in said town.

" In testimony whereof the mayor and aldermen of the town of Dyersburg, Tennessee, have caused this bond and the coupons attached to be signed by the mayor of said town, and countersigned by the recorder, on this 10th day of May, 1873.

" [Seal, Mayor and Aldermen, Dyersburg, Tenn.]

" C. P. CLARK, *Mayor.*

" Countersigned :
    " W. C. DOYLE, *Recorder.*"

"$8.75.                                                    $8.75.

"The mayor and aldermen of Dyersburg, Tennessee, will pay the bearer on the — day of ——, 18—, eight dollars and seventy-five cents, being the semi-annual interest due on Paducah and Memphis Railroad bond No. —.

                    "C. P. CLARK, *Mayor*.
                    "W. C. DOYLE, *Recorder*."

The defendant pleaded *nil debet* and *non est factum*. The cause was tried by the court, on the written waiver of a jury, and it found the issues of law and fact with the defendant, and rendered a judgment for it, to review which the plaintiff has brought a writ of error. There was an agreed statement of facts, which is embodied in a bill of exceptions, and there is a finding of facts and of conclusions of law, also contained therein. From this, the following facts appear :

The plaintiff bought the bonds and coupons before maturity, for full value, and without any knowledge or notice of any defect, infirmity, equity, or condition against the liability of the town therefor, unless, as matter of law, the face of the bonds charges him with notice. The bonds and coupons were signed, sealed and delivered by the properly authorized municipal officers of the defendant, but the want of authority so to do is controverted, the defendant insisting that no proper legislative or other authority existed for making the subscription and issuing the bonds that were made and issued, the plea of *non est factum* only going to that extent. The Mississippi River Railroad Company, to which, it is claimed, the subscription was originally authorized to be made by the defendant, was afterwards consolidated with and became a part of the Paducah and Memphis Railroad Company. That company mortgaged its properties and franchises, the mortgage was foreclosed, and the purchaser at the sale reorganized, under the statute of Tennessee, as the Chesapeake, Ohio and Southwestern Railroad Company, by which the road was built and finally completed on January 1, 1882, and is now operated as a railroad its entire length. The bed and track are now, and were at the date of the bringing of the suit, fully built and

Statement of the Case

equipped and operated through the county of Dyer, in which county the town of Dyersburg is situated, and the last-named company had built a depot building within half a mile of the court-house in the town of Dyersburg before this action was brought.

The proceedings of the board of mayor and aldermen of the town, relative to the subscription in controversy, are contained in a paper, Exhibit " B " to the stipulation, which is set forth in the margin.[1]

_____

[1] " MEMPHIS TENN., *July* 13, '72.

" At a meeting of the board of directors of the Paducah and Memphis Railroad Company held this day — present, L. S. Trimble, vice-president; Jno. Overton, Jr., W. F. Norton, D. M. Henning, and A. T. Lacy; L. S. Trimble, vice-president, in the chair.

" The minutes of the meeting of May 1st were read and approved.

" Jno. Overton, Jr., offered a resolution as follows :.

" Whereas C. P. Clark, mayor of the town of Dyersburg, in the county of Dyer, in the State of Tennessee, by his subscription in writing, has subscribed in behalf of the town of Dyersburg the sum of fifty thousand dollars to the capital stock of the Paducah and Memphis Railroad Company, which said subscription is in the words and figures following, to wit :

" MAYOR'S OFFICE, DYERSBURG, *July 8th*, 1872.

" DEAR SIR: I beg leave to submit herewith a copy of the proceedings of the board of mayor and aldermen of the town of Dyersburg, authorizing me to subscribe $50,000.00 (fifty thousand dollars) to the capital stock of the Paducah and Memphis Railroad Company on certain terms and conditions minutely set forth in said proceedings, payable in bonds of the town of Dyersburg, bearing seven per cent interest, payable semi-annually. In pursuance of the authority thus conferred upon me, I herewith tender and propose to subscribe said sum to the capital stock of your company on the terms proposed, and will promptly issue the bonds of said town, if accepted, as soon as the terms and stipulations allow it.

" I have the honor to be, sir, very respectfully, etc.,

" C. P. CLARK, *Mayor of Dyersburg.*

" To the president of the Paducah and Memphis Railroad Company.

" Now, therefore, be it resolved, That this board does hereby, in behalf of the Paducah and Memphis Railroad Company, accept said subscription, made by said town of Dyersburg, through said C. P. Clark, upon the terms therein expressed.

" Resolved 2d, That the record of the proceedings of the board of mayor and aldermen of said town of Dyersburg, accompanying said sub-

The question of the subscription referred to in the foregoing proceedings was left, under proper notices, to the decision of

scription. be entered upon the minutes of this meeting, and the same is accordingly done, as follows:

" STATE OF TENNESSEE, *Town of Dyersburg :*

" Be it remembered, that, at a meeting of the board of mayor and aldermen of the town of Dyersburg, held at the court-house (within said town), on the 5th day of June — present, his honor, Mayor Clark, and every one of the aldermen of said town: In the year 1872, the following ordinance was adopted by unanimous vote of said board, to wit: The president of the Paducah and Memphis Railroad Company, by attorney, has presented a memorial to the board of mayor and aldermen, praying the board to order an election to be held to allow the qualified voters of the corporation of Dyersburg to determine by ballot whether they are willing to authorize the mayor and aldermen to make a subscription of $50,000 to the capital stock of said company, to be paid in the bonds of said corporation, said bonds to be due and payable in ten years from the date thereof, the interest thereon to be paid semi-annually at the rate of seven per cent per annum, for the purpose of assisting in preparing the road-bed of said railroad company through the county of Dyer; and said memorial was accompanied by a statement of the cost of the work through Dyer County.

" And whereas, heretofore, to wit, on the 9th day of August, 1871, upon application of the president of the Mississippi River Railway Company to the board, under and by virtue of which there was submitted to the qualified voters of said corporation, on the 12th day of September, 1871, the question as to their willingness to vote a subscription of $50,000 to the capital stock of said Mississippi River Railway Company; and whereas, in accordance with said ordinance, said election was held on said 12th day of September, 1871, and resulted in favor of said subscription by a legal majority; and whereas said subscription so made was held to be illegal on account of its exceeding the amount allowed by the existing laws to be voted, and was never accepted by said railway company;

" And whereas afterwards, to wit, on the 14th day of December, 1871, by the legislature of the State of Tennessee (see chapter 122, sec. 1, acts of 1871), said action of the corporation of Dyersburg was ratified and said town authorized to revote a like amount of subscription;

" And whereas, under and by virtue of provisions of their respective charters. and under and by virtue of the laws of the States of Tennessee and Kentucky, the Paducah and Gulf Railroad Company and said Mississippi River Railway Company have been consolidated into one company, under the name and style of the Paducah and Memphis Railroad Company:

" Therefore, on motion, the following ordinance was unanimously adopted, to wit:

" SECTION 1. Be it ordained by the board of mayor and aldermen of the town of Dyersburg, State of Tennessee, that there shall be submitted to

the qualified voters of the town of Dyersburg, and the subscription was carried by a vote largely in excess of the requi-

---

the qualified voters of the town of Dyersburg the proposition to subscribe fifty (50) thousand dollars, in the bonds of said town, to the capital stock of the Paducah and Memphis Railroad Company, on the following terms and conditions, viz.: When the said railroad company has laid the track of said road to the northern and southern line of Dyer County and commenced work on said railway within the limits of Dyer County, then the mayor shall issue to said railway company coupon bonds of the town of Dyersburg, to the amount of said subscription, which is fifty thousand dollars; the whole of said bonds shall be known as the ' Dyersburg, Paducah and Memphis Railroad bonds,' and shall be due and payable in ten years from date of issuance, bearing interest at the rate of seven per cent per annum, payable semi-annually; the bonds shall be issued in sums of $100, $250, and $500, with the necessary interest coupons attached.

"SECTION 2. To pay the interest accruing upon said bonds and, if deemed advisable, to create a sinking fund for their redemption, it shall be the duty of the board of mayor and aldermen of said town, at their first regular meeting after the first day of December of each year, to levy a specific tax upon such subjects of taxation as they may deem best, to meet the interest coupons falling due within the year succeeding said levy; and, if the board of mayor and aldermen, for any cause, fail at the said meeting so to levy said tax, then the same may by said board be levied at any subsequent regular or called meeting, and the coupons of said bonds shall be receivable in the payment of said railroad tax.

"SECTION 3. This subscription shall not become binding until ratified by a majority of three-fourths of the votes of the legally qualified voters of said town voting in an election held to test their sense on the question. The mayor shall make publication in both the Dyer County Progress and Neale's State Gazette, by proclamation, of an election to be held for that purpose, with thirty days' notice, and shall also make publication of this ordinance in connection with said election notice. Those who favor said subscription at said election shall place on their ballot ' For subscription,' and those who oppose shall place on their ballots the words ' No subscription.'

"SECTION 4. The above subscription is made on the condition that the Paducah and Memphis Railway is to be located and built to Dyersburg, and a depot of said road to be located within one-half mile of the court-house, without which condition accepted by said railroad company this subscription to be void, and no bonds shall be issued (and this condition shall be written or printed, if deemed necessary by the mayor, on the face of said bonds).

"SECTION 5. The acceptance by the officers of said railroad company of any portion of the bonds herein authorized to be issued shall bind said company to the terms and conditions of said subscription, as set forth in all the sections of this ordinance.

site constitutional majority. At the date of the subscription the town was without railroad facilities, and the object of the

---

"I certify that the foregoing is a full, true, and perfect copy of the proceedings of the mayor and aldermen in the matter of the subscription to the Paducah and Memphis Railroad Company, as the same appears on the minutes of the board on the 5th day of June, 1872, now in my custody.

"Dyersburg, July 8th, 1872. F. G. SAMPSON, *Recorder.*

"SATURDAY, *July 6th*, 1872.

"The board of mayor and aldermen met at the court-house this evening at candle-light.

"Present: Mayor Clark, Aldermen De Berry, McAllister, Miller, Painer, and Sampson.

"The mayor reported to the board of aldermen that the people of the town of Dyersburg, by a vote of 126 votes 'for subscription' to 2 votes for 'no subscription,' have authorized the mayor and aldermen to subscribe $50,000 to the capital stock of the Paducah and Memphis Railroad Company, on the terms and conditions of the ordinance of June 5th, 1872.

"In pursuance of the ordinance passed by this board on the 5th day of June, 1872, which has been duly ratified by the legal majority of the qualified voters of the town of Dyersburg at the election to-day, on motion, it is ordered, by unanimous consent, that the mayor be authorized to subscribe $50,000 at once to the capital stock of the Paducah and Memphis Railroad Company, on the terms and conditions of said ordinance.

"A true copy from the minutes.

"Attest: F. G. SAMPSON, *Recorder.*

"Which said resolution, having been duly seconded, was, upon motion, adopted. It was ordered that the power of attorney from C. P. Clark, mayor of Dyersburg, to Isaac F. Child, of Dyersburg, Tennessee, be spread upon the records of the company. Said power of attorney is in words and figures as follows, to wit:

"Whereas I am fully authorized and empowered, by the action of the board of mayor and aldermen of the town of Dyersburg, Dyer County, Tennessee, as well as by the vote of the people of the town ratifying that action, to subscribe fifty thousand dollars in the bonds of the town of Dyersburg, (payable in ten years from date of issuance and bearing seven per cent interest, payable semi-annually from date of issuance,) to the capital stock of the Paducah and Memphis Railroad Company; and whereas it is not convenient for me to go to Memphis now and attend to said business in person; I have, therefore, nominated, and do hereby appoint and constitute, Isaac F. Child, of Dyersburg, Tennessee, my true and lawful agent, proxy, and attorney-in-fact to do and perform whatever acts and things it may be proper and necessary for me to do to effect and perfect said subscription, on the terms contained in my proclamation dated June

subscription was to aid the building of the proposed line near the town. The railroad has been built, but no part of the

---

5th, 1872, hereby ratifying and confirming whatever my said attorney shall lawfully do in the premises, as if I did the same myself.

" July 8th, 1872          C. P. CLARK, *Mayor of Dyersburg, Tennessee.*

" STATE OF TENNESSEE, *Dyer County :*

" Personally appeared before me. W. M. Watkins, clerk of the county court of said county, C. P. Clark, mayor of the town of Dyersburg, Tennessee, who acknowledged the execution of the within instrument for the purposes therein contained. I further certify that I am personally acquainted with the said C. P. Clark.

" Witness my hand and seal of the Dyer County court, affixed at Dyersburg, July 10th, 1872.          W. M. WATKINS, *Clerk,*

" [SEAL.]          By ZACK. WATKINS, *D. C.*

" On motion of D. M. Henning, a resolution in words and figures as follows was adopted:

" *Resolved,* That the president of this company be authorized and instructed to call upon the town of Dyersburg for the bonds subscribed to the capital stock of the Paducah and Memphis Railroad Company, amounting to $50,000, as soon as the conditions of said subscription upon the part of the county are complied with.

" Jno. Overton, Jr., offered the following resolution, viz. :

" Whereas an obligation in the words and figures following has been executed and delivered to this company, to wit :

" We, the undersigned, citizens of the county of Dyer and State of Tennessee, for and in consideration that the president and directors of the Paducah and Memphis Railroad Company have and do agree to build and locate their said road to and by the town of Dyersburg, Dyer County, Tennessee, and to locate and build a depot thereon within one-half mile of the court-house in said town, hereby guarantee a subscription to the capital stock of said company of one hundred thousand dollars in the following manner, that is to say :

" We guarantee that there will be voted by the citizens of the corporation of Dyersburg the sum of fifty thousand dollars, as a subscription to the capital stock of said company, and that said subscription will be paid in ten-year coupon bonds of said corporation, bearing interest at the rate of 7 per centum per annum, payable semi-annually, and that said bonds will be issued in accordance with the terms of a proclamation made by the mayor of said town, dated June 5th, 1872, and published in the ' Dyer County Progress' and ' Neal's State Gazette,' newspapers published in the town of Dyersburg, and that said bonds will be prepared as soon as practicable after being voted, and will be delivered to said company in accordance with the terms of said proclamation.

subscription has been paid except the first instalment of interest, which was paid.

The bill of exceptions states as follows : " The court found as facts, 1st, that an ordinance was regularly and legally adopted June 5th, 1872, by the board of mayor and aldermen of the town of Dyersburg, ordering an election to be held by the qualified voters of said town, to determine whether the said town should subscribe for $50,000 of the capital stock of the Paducah and Memphis Railroad Company, to be paid for by said town by issuing to said railroad company its negotiable bonds to that amount, bearing interest at 7 per cent, and payable at 10 years from date ; that, on July 6th, 1872, said proposition was voted on by the qualified voters of said town,

" We further agree that there will be subscribed to the capital stock of said Paducah and Memphis Railroad Company the sum of fifty thousand dollars of private individual subscription, by good and solvent subscribers, upon condition that said road is built and has a depot located within one-half mile of the court-house at Dyersburg, and payable as follows : Twenty-five per cent of the amounts of said private subscription, payable when the said road is constructed to the northern or southern line of said county, and work thereon is commenced in Dyer County, the balance subject to calls of ten per cent every thirty days.

" This latter amount of fifty thousand dollars we guarantee will be subscribed and delivered to said company on or before the 10th day of July, 1872.

" Witness our hands this June 20th, 1872.

" T. E. Richardson, Tom. W. Neal, Jno. S. Kiffington, H. L. Fowlky, F. G. Sampson, C. I. Coker, W. M. Watkins, W. E. De Berry, P. E. Wilson, B. C. Burgis, W. C. Doyle, Wat. Sampson, S. R. Latta, I. F. Child, A. M. Stevens, C. P. Clark, W. P. Sugg, E. G. Sugg, J. E. Roberts, E. S. Thurmond, R. R. Watson, Jno. L. Webb, Alf. Stevens, Jno. Sawyer.

" Therefore, resolved, That this company accepts the said obligation and its stipulations, as the consideration for building and locating the road to and by the town of Dyersburg, and for building a depot thereon within half a mile of the court-house in Dyersburg; and, in reliance of said obligation, the board agrees to so build and locate the road and so to locate the depot.

" 2. That the $52,525 of private subscriptions this day tendered and received in pursuance of that portion of the above obligation which provides for the same, is accepted upon the guaranty of its solvency by the above-named obligees.

" Which said resolution, having been seconded, was, upon motion, adopted."

after 30 days' notice of such election had been duly published in the newspapers of said town, when said proposition was carried by a vote of 126 for the subscription to two against it ; that, at a meeting of the board of mayor and aldermen of said town, held on July 6th, 1872, the returns of said election were duly and properly canvassed by said board, which, by ordinance then duly passed, declared the subscription on the terms of the ordinance of June 5th, 1872, was properly and legally carried, in said election, by the vote as before stated, and instructed the mayor to subscribe said sum of $50,000 to the stock of the said railroad company, upon the terms and conditions of said ordinance; that, acting pursuant to that authority, the mayor of said town, on May 10th, 1873, subscribed for and in the name of said town said sum to the capital stock of said company, received a certificate of stock therefor, issued and delivered the coupon bonds of said town for said amount t ɤ said railroad company, including those here in this suit; that, when said coupon bonds were so executed, issued, and delivered by said mayor to said railroad company, the said company had laid the track of said road to the northern and southern line of Dyer County, and commenced work on said railway within the limits of said county of Dyer; that plaintiff bought the bonds and coupons sued on herein in due course of trade, for full value, before maturity, and without any knowledge or notice of any defect, infirmity, equity, or condition against the liability of said town, except so far as appears on the face of said bonds; that, before the bringing of this suit, the said railroad had been constructed and was being operated its entire length from, Paducah, Kentucky, to Memphis, Tennessee, and was constructed to said town of Dyersburg, Tennessee, and had a depot located within half a mile of the court-house in said town, the same having been done by the Chesapeake, Ohio and Southwestern Railroad Company on or about the — day of ——, as set forth in the agreed statement of facts filed herein. The court ruled that no legislative authority whatever existed for the issuance by said defendant of the bonds and coupons sued on in this case. To which finding and ruling plaintiff then and there duly excepted. The plain-

tiff requested the court to rule that, under the facts found, the defendant was authorized to execute, issue, and deliver to said railroad company the said bonds, which request was refused by the court, to which plaintiff then and there duly excepted. The court thereupon rendered judgment in favor of defendant, supporting its judgment by reading the same opinion filed in the case of *Green* v. *Town of Dyersburg*, 2 Flippin, 477, and directing, by consent of counsel, that the said opinion be filed as its opinion in this case and sent up with the transcript of the record, as required by the rules of the Supreme Court."

*Mr. D. H. Poston* (with whom was *Mr. W. K. Poston* on the brief) for plaintiff in error.

I. It will be noticed that the declaration does not aver that these bonds were issued under any particular act, nor do the bonds recite any particular act as authority for their issuance; the declaration sues for the bonds "executed and issued by said corporation on the 10th day of May, 1873, upon and in pursuance of lawful authority conferred for that purpose on said corporation."

And the bond simply recites that it is issued "under the provision of an act of the legislature empowering them to do so."

Therefore we can look to all the legislation on the subject, and if there be any, authorizing the same, the bonds must be supported.

It will be observed that paragraph 29, Art. II, of the constitution of 1870 is identical with that of 1834, being *verbatim* down to the point of lending corporate aid, the only difference being that the constitution of 1870 has an *addenda*, not in the constitution of 1834, which itself restricts and limits the power of municipal corporations in lending aid and credit, and provides that it can only be done upon the votes of three-fourths of the qualified voters cast at the election, to determine the question, while the constitution of 1834 authorizes it to be done as the legislature may from time to time direct.

However, under both constitutions, it has been held that a subscription in aid of railroads was a corporate purpose, and counties and towns had the right to lend aid and credit, and levy taxes to pay the same. *Nichol* v. *Nashville*, 9 Humphreys, 250, 252; *Louisville & Nashville Railroad* v. *Davidson County*, 1 Sneed, 637; *S. C.* 62 Am. Dec. 424; *City of Memphis* v. *Gayoso Gas Co.*, 9 Heiskell, 518; *Winston* v. *Tenn. & Pacific Railroad*, 1 Baxter, 60.

We insist that there was express legislative authority for the issuance of these bonds, and that they were executed in strict conformity therewith.

[*Mr. Poston* then examined the statutes of Tennessee, and continued:] We further insist that, upon questions of commercial securities, Federal courts are not bound by state decisions. *Oates* v. *National Bank*, 100 U. S. 239, 246; *Pine Grove* v. *Talcott*, 19 Wall. 666, 677.

II. Our second proposition presents the simple question, whether the defendant, having the power to make the subscription and lend the credit, had the implied power and authority to execute and deliver bonds negotiable in form, independent of any express authority conferred.

All the authorities agree that where a municipal corporation has the implied power to borrow money or lend credit, it has the implied power to execute all proper bonds, notes or other negotiable securities to accomplish these purposes. *Seybert* v. *Pittsburg*, 1 Wall. 272; *Commonwealth* v. *Pittsburg*, 41 Penn. St. 278; *Police Jury* v. *Britton*, 15 Wall. 566, 572; *Hull* v. *Marshall County*, 12 Iowa, 142; *Gause* v. *City of Clarkville*, 5 Dillon, 165; *Commonwealth* v. *Pittsburg*, 34 Penn. St. 496; *Griffin* v. *Inman*, 57 Georgia, 370; *Black* v. *Cohen*, 52 Georgia, 621; *Ketchum* v. *Buffalo*, 14 N. Y. 356.

This implied power is thoroughly indoctrinated into the laws and decisions of the State of Tennessee, as will be seen by reference to the cases.

On this point, see *Union Bank* v. *Jacobs*, 6 Humphreys, 515; *Nichol* v. *Mayor of Nashville*, 9 Humphreys, 264; *Adams* v. *Memphis & Little Rock Railroad Co.*, 2 Coldwell, 645; *Moss* v. *Harpeth Academy*, 7 Heiskell, 283.

III. In any event this court should hold the defendant as upon non-negotiable bonds or notes, treating the issuance of negotiable bonds as an excess of authority only, and not invalidating the loan with interest as agreed upon. *Nashville* v. *Ray*, 19 Wall. 468.

*Mr. T. B. Turley* for defendants in error. *Mr. Spuval Hill* was with him on the brief.

MR. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

It is insisted by the plaintiff in error that there was express legislative authority for the issue of these bonds. The first statute relied on is the act of the legislature of Tennessee, approved January 23, 1871, chapter 50 of the acts of 1870–71, entitled "An Act to Enforce Article 2, Section 29, of the Constitution, to Authorize the several Counties and Incorporated Towns in this State to Impose Taxes for County and Corporation Purposes." This statute has been fully considered by us in the case of *Kelley* v. *Town of Milan*, just decided, and shown to have conferred no such authority.

The act approved December 16, 1871, chapter 122 of the Acts of 1871, entitled "An Act to legalize and authorize subscription by incorporated Cities and Towns for the benefit of Railroad Companies created by law," applies only to cases where an incorporated town or city had subscribed to the capital stock of a railroad company prior to the passage of that act. The subscription in the present case was not made until May 10, 1873, the election having been held on July 6, 1872; and the entire act relates only to the validity and the legality of the subscription to stock, and in no manner touches the question of the issue of bonds.

It is also contended that express authority to issue the bonds in question was granted by section 20 of an act passed February 26, 1869, chapter 59 of the acts of 1868–69, which section is as follows: "SEC. 20. *Be it further enacted*, That it shall be lawful for the town of Dyersburg to make a cor-

porate subscription to the capital stock of the Mississippi
River Railroad Company, not to exceed fifty thousand dollars.
in amount, payable in not exceeding four years by annual
assessments levied by the Board of Trustees of said town,
and collected as other moneys are, and bonds of the town
may be issued in anticipation of such collections, collected for
town purposes: *Provided, however,* That before the Board of
Trustees or Aldermen of said town shall make any such sub-
scription, the question shall have been first submitted to the
qualified voters of said town, and shall have received a major-
ity of the votes cast therefor after twenty days' notice of the
time and place of holding said election, and of the amount
proposed to be subscribed."

Reliance is also placed upon section 18 of an ·act passed
February 8, 1870, chapter 55 of the acts of 1869–70, which
section is as follows: " SEC. 18. *Be it further enacted,* That·
stock which has been subscribed, or may hereafter be sub-
scribed, by any county, city, or incorporation, to said railroad
companies may be payable in six annual payments; and it
shall be lawful for county courts and the corporate authorities
·of any city or town making such subscription to issue *short*
bonds bearing interest at the rate of six per cent per annum,
to said railroad companies, in anticipation of the collection of
annual levies, if thereby the construction of the roads can be
facilitated."

As to the act of 1869, the subscription to the stock, not to
·exceed $50,000, was made payable, by section 20, in not
exceeding four years, by annual assessments of taxes. The
express limitation was to the four years, but authority was
given to issue the bonds of the town in anticipation of the
·collections of taxes. Of course, under this provision the
bonds were to be paid by the four annual collections of the
taxes levied by the four annual assessments. That was the
fund provided for their payment. No´ authority was given
for the issue of bonds other than such as were to be paid,
·one-fourth in one year, one-fourth in two years, one-fourth in
three years, and one-fourth in four years; and no authority
was given for the issue of any bond payable in ten years.

As to section 18 of the act of 1870, it gave no power to the town of Dyersburg beyond that conferred by the act of 1869, to subscribe for stock or to issue bonds. The only possible effect it could have as to that town was to modify section 20 of the act of 1869, so as to make the subscription to stock payable in six annual payments, instead of four annual payments, and to authorize the issue of bonds in anticipation of the collection of the annual tax levies, the bonds to be payable in not exceeding six annual instalments, instead of four; but each set of bonds to be still payable by an annual tax levy, and to fall due annually for six years, at the time of the maturity of the levy for each year.

That these statutory provisions did not authorize the issue of bonds payable in ten years is entirely clear. *Pulaski* v. *Gilmore*, decided by the Supreme Court of Tennessee, and published in 21 Fed. Rep. 870 ; *Milan* v. *Railroad Co.*, 11 Lea, 329.

The cases of *Louisville & Nashville Railroad* v. *County Court of Davidson*, 1 Sneed, 683, and *The State* v. *Anderson County*, 8 Baxter, 249, do not sustain the position of the plaintiff in error. While, in each of those cases, the statute provided that not more than one-third of the amount of the subscription should be collected in any one year, it did not prohibit its distribution into more numerous instalments, each of less amount. Here, the acts in question prohibited any extension of time beyond four or six years, and the vote of the town distinctly varied the terms fixed by the statute.

It is also contended by the plaintiff in error that the grant of power to subscribe for the stock carried with it the implied authority to issue negotiable bonds therefor. None of the cases cited by the plaintiff in error, decided outside of the State of Tennessee, establish such doctrine. The cases cited in Tennessee, *Union Bank* v. *Jacobs*, 6 Humphreys, 515 ; *Nichol* v. *Mayor of Nashville*, 9 Humphreys, 252 ; *Adams* v. *Memphis and Little Rock Railroad Co.*, 2 Coldwell, 645 ; *Moss* v. *Harpeth Academy*, 7 Heiskell, 283 ; *The State* v. *Anderson County*, 8 Baxter, 249 ; and *Williams* v. *Railroad Co.*, 9 Baxter, 488, do not maintain the doctrine contended for.

In the case in 6 Humphreys, it was held that a railroad company, a private corporation, could contract a debt for a corporate purpose, and give a negotiable promissory note therefor. In the case in 9 Humphreys, there was express legislative authority to subscribe for stock and issue bonds, and the point decided was that a subscription by a municipality to railroad stock was a county or corporation purpose, within the provision of the constitution empowering the legislature to authorize counties and towns to impose taxes for county and corporation purposes. The case in 2 Coldwell was considered by this court in *Nashville* v. *Ray,* 19 Wall. 468, 479, and it was there said that the doctrines propounded in the opinion in 2 Coldwell, with reference to the implied powers of municipal corporations, were not necessary to the decision of that case. In the case in 7 Heiskell, the question was as to the power of a private corporation to borrow money. In the case in 8 Baxter there was express authority to issue the bonds, and the question of implied power did not arise, as was said by this court in *Claiborne County* v. *Brooks,* 111 U. S. 400, 411. In the case in 9 Baxter, the question now under consideration does not appear to have been raised or discussed, the only question involved being whether the original subscription to the stock of the railroad company was valid.

On the contrary, the decision of the Supreme Court of Tennessee, in the cases of *Pulaski* v. *Gilmore* and *Milan* v. *Railroad Co.,* above cited, was distinctly, that express legislative authority to issue bonds like those involved in the present suit was necessary. In harmony with this view is the fact of the numerous instances in which the legislature of Tennessee, after granting authority to municipalities to subscribe for stock in railroad companies, has also expressly granted the power to issue bonds therefor.

The views of this court on the subject of the implied power to issue municipal bonds were fully expressed in the cases of *Wells* v. *Supervisors,* 102 U. S. 625, and *Claiborne County* v. *Brooks,* 111 U. S. 400. In the first of those cases it was held, that the mere authority given to a municipality to subscribe for stock in a railroad company did not carry with it

the implied power to issue bonds therefor, especially where, as in the present case, special provisions were made for paying the subscription by taxation.

Our views as to the proper construction of the general laws of Tennessee, Code of Tennessee, §§ 1142 to 1161, have been fully expressed in the case of *Kelley* v. *Town of Milan*, just decided.

It is further contended for the plaintiff in error, that this court should, in any event, hold the town liable as upon non-negotiable bonds or notes, treating the issue of the negotiable bonds as an excess of authority only, and not invalidating the loan, with interest, as agreed upon. It is a sufficient answer to this proposition to say that this suit is brought solely for a recovery upon the bonds and coupons, and no question growing out of the liability of the town for the subscription to the stock can be inquired into in this suit.

*The judgment of the Circuit Court is affirmed.*