## MATHEWES v. PORT UTILITIES COMMISSION OF CHARLESTON, S. C. et al.

District Court, E. D. South Carolina. May 22, 1929.

James Allan, F. W. Aley, and M. L. Mc-Crae, all of Charleston, S. C., for plaintiff.

Huger, Wilbur, Miller & Mouzon and Lionel K. Legge, all of Charleston, S. C., for defendants.

ERNEST F. COCHRAN, District Judge. The plaintiff's action is based on the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51 [45 USCA § 51]). Both defendants have demurred on the ground that the action is in tort and that, being municipal corporations, they are not liable for the torts of their agents. The city council of Charleston (sued as the city of Charleston) demurs also on the ground that the acts complained of were those of the port utilities commission, an independent agency over which the city has no control.

The plaintiff brought the action for the benefit of the widow and children of John R. Mathewes, deceased. It sets forth, in substance, that the port utilities commission of Charleston is an administrative board for the operation of the terminal utilities of the city of Charleston, including a railroad engaged in interstate commerce; that the deceased was a conductor on one of the freight trains for carrying interstate commerce and within the terms of the act of Congress and came to his death through the negligence of the defendants while engaged in the operation of shifting freight cars, some loaded with interstate freight. It further alleges that the city of Charleston is made a defendant because the port utilities commission is but an agent of the city for the transaction of the business of operating its port and terminal utilities, including the railroad referred to.

The contention of both defendants is that they are municipal corporations created by the laws of South Carolina, and that under the decisions of the Supreme Court of that state they are not liable for the torts of their officers or agents, and that the federal courts are bound by those decisions. It is also contended that the Federal Employers Liability Act (45 USCA §§ 51–59), does not apply to such municipal corporations and is not to be construed as imposing upon them a liability when they are immune from liability under state law. It is insisted that the distinction which has been drawn in other jurisdictions between the liability of a municipal corporation for the torts of its officers when engaged in other than governmental functions, and their nonliability when engaged in governmental functions, does not obtain in South Carolina.

The powers of the defendants in reference to the port and terminal utilities of the city are contained in sections 4756–4762, inclusive, of the Civil Code of South Carolina of 1922, vol. III. It will not be necessary to set forth these sections in full, nor to discuss their provisions in detail. It is sufficient to say that under them the city is given the power to acquire lands, water, and riparian rights, wharves, buildings, rights of way, and any other property for the purpose and with the right of establishing, constructing, developing, improving, maintaining, and operating the port and terminal utilities of the city in aid of commerce and for the public use and benefit of the city and its citizens. For the purpose of exercising the power and

authority vested in the city under these provisions, the port utilities commission was created and vested with full power and authority *in the name of the City and on its behalf* to carry out the intent and purpose of the provisions of the law. It is also provided that the commission may sue and be sued in any of the courts of the state. Pursuant to these provisions, the city through the port utilities commission operates the railroad upon which the deceased came to his death while engaged in interstate commerce.

It is undoubtedly the rule in South Carolina that a municipal corporation is not liable in tort for the negligence of its agents or employees in the absence of a statute making it liable. Dunn v. Barnwell, 43 S. C. 398, 21 S. E. 315, 49 Am. St. Rep. 843; Hiott v. Walterboro, 127 S. C. 251, 119 S. E. 869.

Moreover, the Supreme Court of South Carolina has rejected the distinction between those torts which are committed by municipalities in the exercise of their public and governmental functions, and those committed in the conduct of the business authorized by law for the advantage of the municipality, but distinct from its public or governmental functions; and has decided that a municipality is not liable in tort for the negligence of its agents, even when engaged in a business of a private nature and not strictly governmental. Irvine v. Town of Greenwood, 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363.

It has been held by the Supreme Court of the United States that the liability of a municipal corporation and the extent and character of the powers which they may possess are to be determined in the federal courts, according to the settled decisions of the higher courts of the state. Detroit v. Osborne, 135 U. S. 492, 499, 10 S. Ct. 1012, 34 L. Ed. 260; Claiborne County v. Brooks, 111 U. S. 400, 410, 4 S. Ct. 489, 28 L. Ed. 470.

It may be conceded that the defendants in this case, according to the state decisions, are not liable, in the absence of statute, for the torts of their agents, and that I am bound by those decisions.

But those decisions are not determinative of the question here presented. The question here presented is whether Congress has the power to make a municipality of a state liable for the torts of its agents when it is engaged in interstate commerce; and if it has that power, whether it has done so by the Federal Employers' Liability Act.

As to the first proposition, there can be little, if any, doubt, and the defendants practically concede, that Congress has such power. The principles announced by the Supreme Court of the United States in South Carolina v. U. S., 199 U. S. 437, 26 S. Ct. 110, 59 L. Ed. 261, 4 Ann. Cas. 737, are to my mind conclusive of the question here presented. In that case, the state of South Carolina under its police power had engaged in the business of selling liquor through dispensaries, and the Supreme Court held that the well-established distinction between duties of a public character cast upon municipal corporations and those which relate to what may be considered their private business was applicable to the state when it enters into private business, and that, inasmuch as the selling of liquor, even though under the police power, was not a strictly governmental function, the business was of a private nature and was not withdrawn from the taxing power of the nation. The power of Congress over interstate commerce is as full and ample as the taxing power, and, if the state itself by engaging in a private enterprise cannot escape the taxing power of the nation, surely a municipality, a mere branch of the state government, cannot by engaging in interstate commerce deprive Congress of the power to regulate that commerce so far as such municipality is concerned. It may be observed that in the case of South Carolina v. U. S., supra (page 454 [26 S. Ct. 113]), the Supreme Court of the United States alluded to the large and growing movement in this country in favor of the acquisition and management by the public of what are termed public utilities, including therein not merely the supply of gas and water, but also the entire railroad system, as one of the reasons why the exercise of such private functions should not deprive the national government of its power over taxation.

But it is argued that the Federal Employers' Liability Act, although using general terms, should not be construed to include municipalities. I am unable to see the force of this argument. The language of the act is broad. It says: "Every common carrier by railroad while engaged in commerce, etc." (45 USCA § 51). Every reason which could be urged upon Congress for the passage of this act in reference to railroads operated by private capital can be urged with equal force as to railroads operated by municipalities. Congress intended to and did occupy the whole field, and all state laws upon the subject, in so far as they cover the same field, are superseded. Second Employers' Liability Cases, 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1.

916

But it is argued also that the Federal Employers' Liability Act does not give a new cause of action which did not exist at common law, but modified the common-law rule with respect to the defenses of contributory negligence, assumption of risk, and negligence of fellow servant. U. S. Code, tit. 45, §§ 51, 53, 54. The argument is, in substance, that the Federal Employers' Liability Act applies to rights of action already existing at common law or by statute in the states, changing the rules as to assumption of risk, contributory negligence, and negligence of fellow servants as applied to those causes of action. But the Federal Employers' Liability Act does confer a right of action. It distinctly provides that every common carrier by railroad, etc., shall be liable in damages to a person suffering injury or death, etc. The right of action given does not arise out of any state law, either common law of the state or statute of the state, but it arises from the act of Congress. In the case at bar, the plaintiff's cause of action arises solely from the act of Congress. It is not based upon the state law in any respect. Those sections of the Federal Employers' Liability Act which deal with assumption of risk, contributory negligence, etc., are applicable only to causes of action arising under the act of Congress.

The defendants cite other cases in support of their contention; but it is not necessary to discuss them. It is sufficient to say that I have examined them and they are all either distinguishable or have no application to the case at bar.

We come now to the further ground of demurrer interposed on behalf of the city of Charleston. It is contended that under the statutes of South Carolina cited above the port utilities commission is an independent agency of the state over which the city has no authority or control, and therefore it is said that the city cannot be made liable for the acts of the commission in operating the railroad in question. But little need be said upon this point. By section 4756 of the Code of South Carolina of 1922, vol. III, the city is authorized to operate the port and terminal utilities in question. By section 4758, the port utilities commission is created "for the purpose of exercising the power and authority vested in such cities under the provisions of Section 4756." By section 4760 it is provided that "the Port Utilities Commission of such cities is vested with full power and authority *in its name to carry out on behalf of such cities*" (italics mine) "the intent and purposes of the provisions of this article; and to that end may exercise all and singular the rights, powers and privileges conferred upon said cities," etc., in section 4756. I think it is clear that the city is given the power to operate its utilities and to operate them through the port utilities commission, which is an agency of the city, created for that purpose. The city is therefore bound by the acts of the commission.

For these reasons, the demurrers must be overruled.