THOMAS DWYER .v. JOHN W. HACKWORTH.

(Case No. 4633.)

1. CITIES AND TOWNS.— The city council of Brenham, acting under a general law, assumed control of the public schools within its limits by resolution adopted April 26, 1875; having thus assumed control, the city had authority to submit to a vote of the property tax-payers of the city, the question whether or not there should be raised by taxation such an amount, in addition to the amount received from the state, as would be necessary to conduct the public free schools of the city for ten months in the year; such amount not to exceed one-half of one per cent.

2. ACTION — SAME.— Such an election having been held, the returns canvassed by the city council, and the result declared that the tax had been carried by the requisite two-thirds vote, in the absence of a proper proceeding to contest the election, or to revise the determination of the result thereof, it was not competent to have such result inquired into and the declaration of the result revised, on the suit of a tax-payer, seeking to enjoin the collection of the tax.

3. TAXATION.— The city of Brenham had authority, by virtue of statutory provisions and a vote of its property tax-payers, to levy a tax not to exceed one-half of one per cent. to support its public free schools for ten months in the year; and although the amount levied and raised for that purpose proved to be greater than was required, the discretion of the city council in fixing the amount will not be revised.

4. SCHOOL HOUSES — SAME.— After the city of Brenham assumed control, in pursuance of law, of its public free schools, its public school houses became public buildings in contemplation of law, and the city could impose a tax of one-fourth of one per cent. for their erection.

5. CITY BONDS — PARTIES.— The validity of a city tax, legally levied, to pay interest on city bonds, which were issued under power conferred by charter, cannot be affected by the fact that the money borrowed on the bonds was misappropriated; nor can the collection of a tax to pay bonds be enjoined, on the ground that the bonds are invalid, unless the bondholders be made parties.

6. ORDINANCE — TAXATION.— The ordinances of the city of Brenham, creating a board of assessment to examine and revise the lists of property, after the same had been duly rendered and accepted, and entered as satisfactory by the assessor and collector, were without authority and illegal.

7. SAME.— Under the city charter of Brenham, when the property owner once inventories and values his property, and the valuation is agreed to by the assessor, it cannot afterwards be disturbed; the action of a tribunal created by the city, and known as the committee on assessments, which sought after such valuation and agreement to change the assessment, was illegal and void.

APPEAL from Washington. Tried below before the Hon. I. B. McFarlane.

Injunction suit, instituted on the 28th day of March, 1881, in the district court of Washington county, by Thomas Dwyer, against the appellee, John W. Hackworth, assessor and collector of taxes of the city of Brenham, to enjoin the collection of certain *ad valorem* taxes levied by the city council of that city, and assessed against the plaintiff. The taxes were as follows:

1st. One-half of one per cent. for the support of the public free schools of said city ................................................. $370 60

2d. One-fourth of one per cent. to erect a public free school house in said city ................................................. 185 30

3d. One-eighth of one per cent. to pay interest and provide a sinking fund on the bonds of said city ................................................. 92 65

4th. So much of the tax of one-eighth of one per cent. for general purposes as was assessed and computed on the increased valuation of the plaintiff's property made by the committee on assessments,— said increase being $29,520 ................................................. 36 90

    In the aggregate ................................................. $685 45

It was claimed that the taxes and increase of valuation were illegal. The plaintiff did not deny the legality of the remainder of the taxes assessed against him — $55.75,— being one-eighth of one per cent., for general purposes, on the original valuation of the plaintiff's property, as rendered by him and accepted and agreed to by the defendant, $44,600, but he prayed for an injunction restraining the sale of certain goods of the plaintiff, which had been levied on and advertised for sale by the defendant for the whole amount of the said taxes assessed against the plaintiff, to wit, $741.20, and on the further ground that the levy was wrongfully and oppressively made. The injunction was granted.

On the 16th day of April, 1881, the defendant filed his answer, and also a motion to dissolve. The motion was heard May 13, 1881, and an interlocutory order made dissolving the injunction; the defendant being required to execute a refunding bond in double the amount of taxes restrained. The defendant thereupon gave bond and proceeded to enforce the collection of said taxes.

On final hearing, October 28, 1881, the cause was submitted to the court for decision upon an agreed statement of the facts. The issues made by the pleadings and proof, which the court was requested to decide, were also agreed on; upon the decision of which, such judgment should be rendered as the nature of the case should require. Judgment was rendered in favor of the defendant upon all of the issues, sustaining the legality of all of the taxes, the increase of valuation, and the levy upon the property of the plaintiff, dissolving the injunction, and dismissing the suit at plaintiff's costs.

The agreed statement of facts is quite voluminous, and, in view of the opinion, need not be given. The agreed issues are sufficiently indicated by the opinion.

*Breedlove & Ewing*, for appellant.

I. The act of April 24, 1874, entitled "An act to provide for the amendment of town and city charters," was an attempt by the legislature to delegate the law-making power vested in it by the constitution of the state, and was therefore unconstitutional; and the amendment of the city charter, adopted by the city council, and submitted to and ratified and adopted by the votes of a majority of the qualified electors of said city, at an election held for that purpose, under the provisions of said act, is null and void. Gen. Laws 1874, 140, 141; Const. 1869, art. II, sec. 1; art. III, secs. 3, 24; art. IV, sec. 25; amendment to art. XII, sec. 40 of Const. of 1869; Gen.

Laws 1874, 234, 235; Const. 1876, art. II, sec. 1; art. III, secs. 1, 29, 30, 32, 33, 37–39, 56, 57; art. VII, sec. 1; State v. Swisher, 17 Tex., 441; Willis v. Owen, 43 Tex., 69; San Antonio v. Jones, 28 Tex., 31; Cooley's Const. Lim. [*116, 117], 141, 142, and authorities cited; Sedgwick on Stat. and Const. Law, 164; Ex parte Wall, 48 Cal., 279; State v. Weir, 33 Iowa, 134; Brewer Brick Co. v. Inhabitants of Brewer, 62 Me., 62; Lamont v. Lidwell, 62 Mo., 188; Barto v. Himrod, 8 N. Y., 483; Rice v. Foster, 4 Harr., 479.

II. Brenham is a city of less than ten thousand inhabitants, and by the provisions of the constitution, taxation is limited to "one-half of the state tax, except for the payment of debts already incurred, and for the erection of public buildings not to exceed fifty cents on the one hundred dollars in any one year;" and the tax to defray the current expenses of the local government of said city " shall never exceed, for any one year, one-fourth of one per cent." Taxation beyond these limits, and for other purposes than those mentioned, being expressly prohibited, the action of the city council, in ordering an election to determine whether a tax should be levied for the support of said schools, in declaring the result of said election, and in levying said tax of one-half of one per cent., cannot be sustained under articles 3785–3787 of the Revised Statutes, the same being in direct violation of the provisions of the constitution of the state; and the said action of the city council is therefore null and void.

III. The question submitted at the election of July 27, 1880, was " whether or not there shall be raised by taxation such an amount, in addition to the school fund received from the state, as may be necessary to conduct the public free schools for ten months in the year, not to exceed one-half of one per cent," and the city council could not legally levy a greater tax than reasonably appeared to be necessary for that purpose; and it appearing that the tax of one-half of one per cent. was not only greatly in excess of what appeared to be needed, but sufficed to raise more than double the sum required for the scholastic year beginning September 1, 1880, or for any previous year, said tax was excessive and void. Cooley on Taxation, 296, 297; Burroughs on Taxation, 376.

IV. The constitution requires that " taxation shall be equal and uniform," and the fund for the support of public schools being included in the tax levied for general purposes, no extra or additional tax for that object can be legally levied by counties, cities or towns; and the school tax on city property should not exceed that

paid by tax-payers in the country. The state tax of 1880 was one-half of one per cent, one-fourth of which was set apart for the

| | |
|---|---|
| Support of schools | ⅛ per cent. |
| City school tax | ½ per cent. |
| City school house tax | ¼ per cent. |
| Making | ⅞ per cent. |

required of the plaintiff as a citizen of Brenham, while the owner of property in the country paid but one-eighth per cent. for the same purposes. Const., art. III, secs. 48, 56; art. VIII, secs. 1, 3, 9.

V. The court erred in deciding that the correctness of the action of the city council, in canvassing the returns, and announcing the result of the election held on the 27th of July, 1880, cannot be inquired into in this suit, and that the action of said council is conclusive. Const., art. XI, sec. 10; Blessing v. Galveston, 42 Tex., 641; High on Injunctions, § 354; Cooley, Const. Lim., [*623] 786, and note; Dillon on Mun. Corp., §§ 139–142; Supervisors v. Webster, 53 Ill., 141.

VI. The charter of the city of Brenham contains no provision for taxation for the erection of school houses, and the amendment to the charter, enacted by the city council and adopted by a vote of the people, in 1875, is a nullity, and affords no justification for the levy of the tax of one-fourth of one per cent. Const., art. VIII, sec. 9; art. XI, sec. 2; R. S., arts. 3771–3780; Pye v. Peterson, 45 Tex., 312; Williams v. Davidson, 43 Tex., 34; 2 Dillon on Mun. Corp., § 605; Cooley on Taxation, 209; Burroughs on Taxation, 370–373; Special Laws 1873, 24, 25; Gen. Laws 1879, 44; Rhine v. McKinney, 53 Tex., 361; Burroughs on Taxation, 236–238, 243, 248; Dillon on Mun. Corp., secs. 55, 250, 251, 620; First Nat. Bank v. Cook, 77 Ill., 622; Brown v. Harris, 52 Mo., 336; Sioux City, etc., R. R. v. Washington Co., 3 Neb., 30; Nat. Bank v. City of Elmira, 53 N. Y., 49; Jewell v. Van Steenburgh, 58 N. Y., 86.

*Sayles & Bassett, Seth Shepard* and *C. C. Garrett,* for appellee.

. . . VI. The city council had the right under its charter to regulate the manner and mode of making out tax lists or inventories, and the appraisement of property therein, and to create a committee on assessments; and the acts of said committee in raising said assessment were legal and binding. Charter of Brenham, title "Taxation," art. 4, sec. 1; Special Laws 1873, p. 22; id., title "Collection of Taxes," art. 2, sec. 1, p. 24; id., art. 1, sec. 1, p. 24; id., art. 4, sec. 1, p. 25; Charter, Special Laws 1873, p. 20, sec. 43; General Laws 1879, p. 44; Davis v. State, 2 Tex. Ct. App., 345; *Ex parte* Oliver, 3 Tex. Ct. App., 345; Gabel v. City of Houston, 29 Tex., 335.

VII. The plaintiff having failed to appeal to the board of appraisement from the action of the committee on assessments, he is now estopped to inquire into the action of said committee; and said action cannot be attacked in this collateral proceeding. Cooley on Taxation, 528–9; id., 534, 540; Burroughs on Taxation, p. 238.

GOULD, CHIEF JUSTICE.— Most of the questions presented in this case are settled by the decision in the case of The City of Fort Worth *v.* Davis *et al.*, and our conclusions may be briefly stated as follows:

1st. The city council of Brenham, acting under "An act to authorize the cities of Texas to maintain public schools," by resolution adopted April 26, 1875, assumed control of the public schools within its limits. It has not been found necessary to inquire whether the proceeding in September, 1875, to amend the city charter, was valid or not.

2d. The city having thus assumed control of its public schools, the council had authority on July 27, 1880, to submit to a vote of the property tax-payers of said city, the question whether or not there should be raised by taxation such an amount, in addition to the school fund received from the state, as may be necessary to conduct the public free schools of said city for ten months in the year, not to exceed one-half of one per cent.

3d. Said election having been duly held, the returns canvassed by the city council, and the result declared to be that said tax had been carried by the requisite two-thirds vote, and no proceeding having been instituted to contest said election, or to have the determination of the result thereof revised, it was not competent to have said result inquired into or said determination revised in this suit.

4th. The city council, by virtue of this vote of the tax-payers, and of the statutory provisions to that effect, had authority to levy a tax not to exceed one-half of one per cent. for the support of public schools for ten months out of the year, and although the amount levied and raised proves to be greater than was required for that purpose, the discretion of the council in fixing the amount will not be revised.

5th. The city having assumed control of its public schools, public school houses within the city became public buildings within the meaning of the law, and a tax of one-fourth of one per cent. for the erection of such school houses was valid.

6th. It appears from the agreed statement of facts and the ordinance set out therein, that the city of Brenham, under its charter, had authority to borrow money for general purposes, and did so

borrow, by selling its bonds, to the amount of $15,000. The validity of a tax levied to pay the interest on said bonds is not affected by the subsequent appropriation of the money borrowed to an alleged unauthorized purpose. Nor is it competent to enjoin the collection of said tax, on the ground of the invalidity of the bonds, without making the holders of those bonds parties to the suit. Board v. Texas & Pac. R'y, 46 Tex., 316. So far as it appears from the agreed statement, the tax of one-eighth of one per cent. to pay interest and raise a sinking fund for the payment of said bonds was valid.

7th. The ordinances of said city creating a board of assessment to examine and revise the lists of property, after the same had been duly rendered to and accepted and entered as satisfactory by the assessor and collector, were without authority and illegal.

The charter creates the office of assessor and collector, makes it the duty of all property owners within the corporation to render to said assessor a complete inventory of their property subject to taxation, and plainly indicates that the value of the property inventoried is to be fixed by the property owner and the assessor. Special Laws of 1873, p. 3, art. I; art. X, sec. 1, p. 12; p. 24, art. III, sec. 1; p. 25, art. IV, sec. 1. See, also, City Ordinance 306. "Whenever the party rendering property for assessment and the assessor cannot agree on the valuation of such property," the valuation is referred to a board of appraisement, appointed by the council, and composed of three commissioners, who are to be persons not connected with the city government, qualified voters, and the owners of real estate in the city to the value of $3,000. Special Laws of 1873, p. 25. The charter makes the action of this board in appraising property final, but secures to the property owner the right of being heard before said board. In pursuance of this plainly marked out system, ordinance 306 of the city required the person rendering an inventory to "affix to each item of property his valuation thereof, and if the same is satisfactory to the assessor and collector, he shall so render the inventory and enter said valuation upon the assessment roll; but if said valuation is not satisfactory, he shall value the property and set his valuation in a column opposite the other, and refer both to the board of appraisement, who shall make a valuation thereof." In June, 1879, however, an intermediate tribunal, styled the "committee on assessments," was organized under an ordinance of the council, whose duty it was made, after published notice of their time of meeting, to revise the list of the property of each person, "and to fix the fair market value of the property on

the list." The ordinance provides that the assessor shall enter on his rolls the valuation of property by this committee, and thereafter gives the property owner dissatisfied with this valuation a right of appeal to the board of appraisement. Appellant Dwyer inventoried and appraised his property in due form at $44,600, and that valuation was agreed to and received by the assessor. Afterwards the committee of assessments, composed of two of the city council, without the actual knowledge of Dwyer, increased the valuation of his property to the aggregate sum of $74,120.

It is claimed that the power of the council was sufficient to the creation of this committee, and reference is made to several sections of the charter, viz.: One empowering the council "to provide by ordinance for the assessing and collecting of the taxes aforesaid," etc. Special Laws of 1873, pp. 22–3. Another authorizing them to "make all such rules and regulations, and ordain and pass all ordinances as they may deem necessary to the levying, imposing, assessing and collecting of any of the taxes herein provided." Laws of 1873, p. 24. Another authorizing them "to regulate the manner and mode of making out tax lists or inventories, and the appraisement of property therein," etc.; "to fix the duties and define the powers of the assessor and collector, and adopt such measures as they may deem advisable to secure the assessment of all property within the limits of said city and collect the tax thereupon." These powers must be construed so as to be consistent with the system of assessment and appraisement marked out in the charter. The obvious design of the charter is that where the owner inventories and values his property, and that valuation is agreed to by the assessor, it shall not afterwards be disturbed. The creation of a committee to revise the valuation thus agreed to is wholly irreconcilable with the positive directions of the charter, conferring the power of revision on the board of appraisement, and upon them only, in case the party rendering the property and the assessor cannot agree on the valuation. Even the board of appraisement would have no jurisdiction to raise the valuation, except in case of disagreement. Like the board of equalization acting under the laws in force in 1876, the board of appraisement had no general authority to change valuations. I. & G. N. R. R. Co. v. Smith, 54 Tex., 1–12. See opinion of attorney general and circular from comptroller's office, copied in the opinion of the court in that case. See, also, Burroughs on Taxation, p. 374, citing Placerville v. Wilcox, 35 Cal., 21.

Our opinion is that the action of the committee of assessments was illegal and void. The proper valuation of appellant's property

was that affixed by him and accepted and agreed to by the assessor. The increased valuation of his property by the committee of assessments, amounting to $29,520, and the taxes assessed and collected of him on that sum, were illegal. The judgment will be reversed, and, in accordance with the agreement of the parties, judgment will be here rendered in favor of the plaintiff Dwyer and against defendant Hackworth and his sureties on his refunding bond for the amount of taxes so wrongfully assessed and collected, with interest from July 9, 1881, at eight per cent. per annum, and for all costs of suit in this court and in the district court.

REVERSED AND RENDERED.

[Opinion delivered June 9, 1882.]