## BRENHAM v. GERMAN AMERICAN BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 120.    Argued March 17, 1892. — Decided March 28, 1892.

Bonds were issued by the city of Brenham, in Texas, in July, 1879, payable to bearer, to the amount of $15,000, under the assumed authority of an act of Texas, passed in 1873, incorporating the city, and giving its council authority to borrow, for general purposes, not exceeding $15,000 on the credit of the city; *Held*, that the city had no authority to issue negotiable bonds, and that, therefore, even a *bona fide* holder of them could not recover against the city on them or their coupons.

Power in a municipal corporation to borrow money not being nugatory although unaccompanied by the power to issue negotiable bonds therefor, it is easy for the legislature to confer upon the municipality the power to issue such bonds; and, under the well settled rule that any doubt as to the existence of such power ought to be determined against its existence, it ought not to be held to exist in the present case.

The cases on this subject reviewed; and *Rogers* v. *Burlington*, 3 Wall. 654, and *Mitchell* v. *Burlington*, 4 Wall. 270, held to be overruled.

THIS was an action against a municipal corporation to recover upon coupons cut from negotiable bonds issued by it. Judgment below for plaintiff, to which this writ of error was sued out. The cause was first argued on the 14th of December, 1891. On the 26th of January, 1892, a reargument was

ordered, which was had March 17. The case is stated in the opinion.

*Mr. S. R. Fisher*, for plaintiff in error, argued at the first hearing, and at the second submitted on his brief.

*Mr. A. H. Garland*, for defendant in error, argued at both hearings. *Mr. Henry Sayles*, for same, argued at the first hearing, and submitted on his brief at the second.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought November 8, 1886, in the Circuit Court of the United States for the Western District of Texas, by the German-American Bank, a New York corporation, against the city of Brenham, a municipal corporation of the State of Texas, to recover $4175 and interest, on 504 coupons, amounting to $4175, being 280 coupons for $2.50 each, 125 coupons for $5 each, 84 coupons for $25 each, and 15 coupons for $50 each, cut from 50 bonds for $50 each, 25 bonds for $100 each, 14 bonds for $500 each, and 3 bonds for $1000 each, being all the bonds of the issue, $15,000 in amount. The bonds read as follows, except as to number and amount, and had the proper coupons annexed:

"UNITED STATES OF AMERICA.

"STATE OF TEXAS.                    CITY OF BRENHAM.

"CITY OF BRENHAM BONDS.

"No. ——.                                        $100.

"Bonds for General Purposes, $15,000.

"Twenty years after date, for value received, the city of Brenham promises to pay to bearer one hundred dollars, with interest at the rate of ten per cent per annum from date, payable semi-annually, on the first days of September and March of each year, upon presentation of the proper coupon hereto annexed, both principal and interest payable at the office of the treasurer of the city of Brenham. This bond is redeemable by the city of Brenham after the expiration of ten years

from date hereof.    This bond is authorized by an ordinance of the city of Brenham, approved June 7, A.D. 1879.

[L. S.]    " In witness whereof, the mayor and secretary of the city of Brenham hereunto set their hands and affix the seal of the city of Brenham, this 31st day of July, A.D. 1879.

"M. P. KERR, *Mayor.*

"C. H. CARLISLE, *City Secretary.*"

The ordinance referred to in the bonds is set forth in the margin.[1]

---

[1] An ordinance to provide for the issue and sale of fifteen thousand dollars in coupon bonds of the city, to borrow money for general purposes.

Be it ordained by the city council of the city of Brenham:

SEC. 1. That the mayor be, and is hereby, authorized and empowered to have printed coupon bonds of the city of Brenham to the amount of fifteen thousand dollars.

SEC. 2. Said bonds shall be three (3) of the denomination of one thousand dollars ($1000.00,) fourteen (14) of the denomination of five hundred ($500 00) dollars, twenty-five (25) of the denomination of one hundred ($100.00) dollars, and fifty of the denomination of fifty ($50.00) dollars.

They shall be made payable to bearer twenty years after date, at the office of the treasurer of the city of Brenham, with interest from date until paid, at the rate of ten per cent per annum, payable semi-annually, on the first days of September and March, at the office of the treasurer of the city of Brenham, but the city shall have the right to redeem said bonds at any time after five years from date.

SEC. 3. Said bonds shall be dated and interest begin to run on the first day of ———, A.D. 18 —, provided that should any of said bonds be sold at a subsequent date the amount of interest then due shall be endorsed as a credit on the coupons first due.

SEC. 4. Said bonds shall be signed by the mayor and countersigned by the city clerk, and the seal of the city shall be affixed, and they shall be numbered and registered as Series 2, No. —, giving the number of the bond issued, commencing with No. 1.

SEC. 5. Coupons shall be attached to each of said bonds for each semi-annual instalment of interest, which said coupon shall have printed thereto the signature of the mayor and the city clerk, and shall be received for general ad valorem taxes of the city.

SEC. 6. Said bonds shall be negotiated and sold by the mayor and the finance committee of the city as the same may be required for general purposes, but in no case shall they be sold at a greater discount than five per

The original petition of the plaintiff alleged that the bonds and coupons were issued, executed, sold and delivered, and put in circulation under authority of the ordinance referred to.

The defendant, by its original answer, protested against the jurisdiction of the court, and raised the question of the *bona fide* ownership by the plaintiff of the coupons sued on, alleging that they were owned by one Mensing, a citizen of Texas, and that the transfer of them by him to the plaintiff was colorable only, and for the purpose of giving the court jurisdiction. The defendant at the same time demurred to the petition, specifying grounds of demurrer, and put in an answer to the merits, setting forth that the city had a population of less than 10,000 inhabitants, and was incorporated February 4, 1873, with powers limited by its charter and the constitution of the State; that it had no power, on June 7, 1879, to pass ordinances repugnant to the constitution and laws of the State; that, under the constitution of the State of 1876, and prior to the passage of the ordinance of June 7, 1879, cities and towns with a population of 10,000 inhabitants or less had authority to collect an annual tax to defray only the current expenses of local government, and were without power to borrow money, issue negotiable bonds therefor and collect taxes for the payment of the same; that the city council had no power, on June 7, 1879, to pass the ordinance of that date; that no bonds or coupons issued in pursuance thereof constituted any legal liability against the city; that the bonds were issued in violation of the ordinance, in that the ordinance

cent, and the proceeds thereof shall be placed in the treasury of the city to the credit of the general fund.

Sec. 7. That there be, and is hereby, appropriated out of the general ad valorem tax of the city one-eighth of one per cent, or so much thereof as may be necessary, on the assessed value of the taxable property of the city, as a special interest and sinking fund with which to pay the interest on said bonds and liquidate the same, and said fund shall be kept separate from the other funds of the city and shall be used for no other purpose.

Sec. 8. That this ordinance go into effect and have force from and after its passage.

Approved June 7th, 1879.                    M. P. KERR, *Mayor.*

Attest: C. H. CARLISLE, *Secretary.*

authorized the issuing of the bonds payable twenty years after the date thereof, and to be redeemable, at the option of the defendant, at any time after five years from their date; that § 4 of article 11 of the constitution provided that no municipal corporation should become a subscriber to the capital stock of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; that $3000 of the $15,000 of the bonds were for the benefit of the fire department of the city, and the remaining $12,000 were in aid of the Gulf, Colorado and Santa Fé Railroad Company, in providing for the purchase of the right of way over the streets of the city and the purchase of depot ground, to secure the construction of said railroad through the city; that $12,000 of the bonds were sold by the city, $5000 to one Mensing, and $7000 to two other persons, and Mensing also became the owner of those $7000 of bonds, and he and the other two purchasers bought the bonds with actual knowledge of the purpose for which they were issued, as well as record notice of such illegal purpose, as disclosed by the public records and minutes of the city council; and that the plaintiff, if it became the owner of the bonds and coupons, purchased the coupons after their maturity and with knowledge of all the facts attending their issue, well knowing that they were issued to raise money to enable the defendant to purchase the said right of way and depot ground for the said railroad company.

Afterwards, the defendant put in an amended answer, amending its former demurrers and answer, but not varying the material allegations of fact contained in its former answer.

The plaintiff then filed a supplemental petition, demurring to the answers and excepting thereto by special allegations, and also alleging matters of fact in response to the answers, and averring that the defendant was authorized to issue the bonds in question, and that, if their proceeds were misappropriated by the city council or the agents of the city, such misappropriation ought not to affect the rights of the plaintiff; that the bonds were sold by the lawfully authorized agents of the city, and it received full value for them; that the parties from whom the plaintiff received the bonds were *bona fide*

purchasers of them before maturity, having paid a valuable consideration therefor; and that the defendant was estopped by the fact that it paid interest on the bonds without objection for three years after they were issued, and in 1884 published a statement of its financial condition, in which it included said $15,000 of bonds as part of its legal liabilities, all of which was made known to the plaintiff before it became the owner of the bonds.

The defendant then filed a supplemental answer, demurring to the supplemental petition and specially excepting to parts of it, and raising an issue of fact as to its allegations.

The plea in abatement, or to the jurisdiction of the court, was tried by a jury, which found for the plaintiff; and afterwards the issues of fact on the pleadings were tried by a jury, which found a verdict for the plaintiff for $5510.10, and the court entered a judgment overruling the general and special demurrers and exceptions of the defendant, and the general demurrer and exceptions of the plaintiff, and the special exceptions and demurrers of the defendant to the plaintiff's supplemental petition; and a judgment for the plaintiff was entered for $5510.10 with interest and costs. To review this judgment the defendant has brought a writ of error.

On the 4th of February, 1873, an act was passed by the legislature of Texas, (Special Laws of Texas of 1873, c. 2, p. 2,) incorporating the city of Brenham. By article 3, § 2, of that act, (p. 14,) it is provided as follows: " Sec. 2. That the city council shall have the power and authority to borrow for general purposes not exceeding ($15,000) fifteen thousand dollars on the credit of said city;" also, by article 7, § 1, (p. 23,) as follows: " Sec. 1. Bonds of the corporation of the city of Brenham shall not be subject to tax under this act."

At the date of the incorporation of the city and of the passage of the ordinance in question, the city had a population of over 4000 and less than 10,000 inhabitants.

On the 28th of March, 1881, one Dwyer instituted the suit in the District Court of Washington County, Texas, against one Hackworth, assessor and collector of taxes of the city of Brenham, to enjoin the collection of certain taxes levied by

the city council of the city and assessed against Dwyer, including as a part thereof one-eighth of one per cent to pay interest and provide a sinking fund on the bonds of the city, the bonds so referred to being the identical bonds which are involved in this suit. That case went to the Supreme Court of Texas, and is reported as *Dwyer* v. *Hackworth*, 57 Texas, 245.

Various points are taken by the defendant as assignments of error; but we consider it necessary to discuss only one of them, the decision of which will dispose of the case.

The court charged the jury, among other things, (35 Fed. Rep. 185,) that the power in the city to borrow money carried with it the authority to issue the bonds, and that the defendant had capacity to issue the bonds in question as commercial paper, and bind itself to pay them and the coupons. The defendant, by its demurrer to the plaintiff's petition, stated as ground of demurrer that it did not appear from the petition that the defendant was authorized by the constitution and laws of Texas to issue the bonds and coupons. The court overruled such demurrer, and by a bill of exceptions it appears that the defendant excepted to such ruling. The defendant demurred also to the plaintiff's supplemental petition, on the ground that that petition failed to show any authority in the defendant to issue the bonds and coupons. This demurrer was overruled, and it appears by a bill of exceptions that the defendant excepted to the ruling. It also appears by a bill of exceptions that the defendant excepted to the charge that the power of the city to borrow money carried with it authority to issue the bonds, and that the city had the capacity to issue the bonds as commercial paper, the ground of the exception being stated to be that, under the constitution of Texas, the expense of carrying out the general governmental purposes of the defendant was to be defrayed by the levying of a tax and not by issuing bonds, and that the bonds issued were not authorized to be clothed with the incidents of commercial paper.

The principal contention on the part of the defendant is that it was without authority to issue the bonds, and that they were void for all purposes and in the hands of all persons.

This point is presented with reference to the charter of 1873, considered apart from the provisions of the constitution of 1876, and also with reference to the effect which the constitution had upon the power claimed under the charter.

Article 11, sections 3 to 7 inclusive, of the constitution of Texas of 1876, provided as follows:

"SEC. 3. No county, city or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law.

"SEC. 4. Cities and towns having a population of ten thousand inhabitants or less, may be chartered alone by general law. They may levy, assess and collect an annual tax to defray the current expenses of their local government, but such tax shall never exceed, for any one year, one-fourth of one per cent, and shall be collectible only in current money. And all license and occupation tax levied, and all fines, forfeitures, penalties, and other dues accruing to cities and towns, shall be collectible only in current money.

"SEC. 5. Cities having more than ten thousand inhabitants may have their charters granted or amended by special act of the legislature, and may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful, for any one year, which shall exceed two and one-half per cent of the taxable property of such city; and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon.

"SEC. 6. Counties, cities and towns are authorized, in such mode as may now or may hereafter be provided by law, to levy, assess and collect the taxes necessary to pay the interest and provide a sinking fund to satisfy any indebtedness heretofore legally made and undertaken; but all such taxes shall be assessed and collected separately from that levied, assessed and collected for current expenses of municipal government,

and shall when levied specify in the act of levying the purpose therefor, and such taxes may be paid in the coupons, bonds or other indebtedness for the payment of which such tax may have been levied.

"SEC. 7. All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized, upon a vote of two-thirds of the tax-payers therein, (to be ascertained as may be provided by law,) to levy and collect such tax for construction of sea-walls, breakwaters or sanitary purposes, as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund, and the condemnation of the right of way for the erection of such works shall be fully provided for."

There is nothing in the charter of the defendant which gives it any power to issue negotiable, interest-bearing bonds of the character of those involved in the present case. The only authority in the charter that is relied upon is the power given to borrow, for general purposes, not exceeding $15,000 on the credit of the city. The power given to the defendant by § 4 of article 11 of the constitution, the defendant having a population of less than 10,000 inhabitants at the date of its charter and at the date of the ordinance, was only the power to levy, assess and collect an annual tax to defray the current expenses of its local government, not exceeding, for any one year, one-fourth of one per cent.

That in exercising its power to borrow not exceeding $15,000 on its credit, for general purposes, the city could give to the lender, as a voucher for the repayment of the money, evidence of indebtedness in the shape of non-negotiable paper, is quite clear; but that does not cover the right to issue negotiable paper or bonds, unimpeachable in the hands of a *bona fide* holder. In the present case, it appears that Mensing bought from the defendant $5000 of the bonds at 95 cents on the dollar, and that other $7000 of the bonds were sold by

the city for the same price, it thus receiving only $11,400 for $12,000 of the bonds, and suffering a discount on them of $600. The city thus agreed to pay $12,000, and interest thereon, for $11,400 borrowed. This shows the evil working of the issue of bonds for more than the amount of money borrowed.

It appears by the record that depot grounds in, and the right of way through, the city of Brenham were bought for the Gulf, Colorado and Santa Fé Railroad Company with money realized from the sale of bonds issued under the ordinance of June 7, 1879, and that $3000 of such bonds were used by the city for fire department purposes.

The power to borrow the $11,400 would not have been nugatory, unaccompanied by the power to issue negotiable bonds therefor. *Merrill* v. *Monticello*, 138 U. S. 673, 687; *Williams* v. *Davidson*, 43 Texas, 1, 33, 34; *City of Cleburne* v. *Railroad Company*, 66 Texas, 461; 1 Dillon on Municipal Corp. 4th ed. § 89, and notes; § 91, n. 2; § 126, n. 1; §§ 507, 507 *a*.

The confining of the power in the present case to a borrowing of money for general purposes on the credit of the city, limits it to the power to borrow money for ordinary governmental purposes, such as are generally carried out with revenues derived from taxation; and the presumption is that the grant of the power was intended to confer the right to borrow money in anticipation of the receipt of revenue taxes, and not to plunge the municipal corporation into a debt on which interest must be paid at the rate of ten per centum per annum, semi-annually, for at least ten years. It is easy for the legislature to confer upon a municipality, when it is constitutional to do so, the power to issue negotiable bonds; and, under the well-settled rule that any doubt as to the existence of such power ought to be determined against its existence, it ought not to be held to exist in the present case.

A review of the cases on this subject in this court will be useful.

In *Rogers* v. *Burlington*, 3 Wall. 654, 666, in 1865, it was held that the statutory power granted to the city of Burling-

ton, Iowa, " to borrow money for any public purpose," gave
authority to the city to borrow money to aid a railroad com-
pany in building a road for public travel and transportation,
and that, as a means of borrowing money to accomplish such
object, the city might issue its bonds to be sold by the rail-
road company to raise the money.   Bonds were issued and
loaned to the company.   They were coupon bonds in the
usual form, and were secured by first-mortgage bonds of the
company.   Suit was brought by a *bona fide* holder for value,
to recover against the city on the coupons, and the case came
up on a demurrer to the petition.   The demurrer was sus-
tained by the Circuit Court and judgment rendered for the
city; but this court reversed that judgment.   In the opinion
of this court, as to the power to issue the negotiable bonds, it
was said: " Common experience shows that the issuing of
bonds by a municipal corporation as material aid in the con-
struction of a railroad, is merely a customary and convenient
mode of borrowing money to accomplish the object; and it
cannot make any difference, so far as respects the present
question, whether the bonds, as issued by the defendants,
were sold in the market by their officers, or were first
delivered to the company, and were by their agents sold
for the same purpose."   Chief Justice Chase and Justices
Grier, Miller and Field dissented.   Justice Field delivered a
dissenting opinion, in which his three associates concurred,
and which stated, as to the authority of the city to issue the
bonds, that there was no such authority, either in the charter
of the city or in any other legislation of the State; that the
authority conferred was to borrow money ; that no money
was borrowed, but the bonds of the city were loaned; and
that borrowing money and loaning credit were not convertible
terms.

In *Mitchell* v. *Burlington,* 4 Wall. 270, the case of *Rogers* v.
*Burlington, supra,* was affirmed.

But in *Police Jury* v. *Britton,* 15 Wall. 566, (when Justices
Wayne, Nelson and Grier had left the bench, and Justices
Strong, Bradley and Hunt had come upon it, Chief Justice
Chase and Justices Clifford, Swayne, Miller, Davis and Field

remaining,) it was held that the trustees or representative officers of a parish, county or other local jurisdiction, invested with the usual powers of administration in specific matters, and the power of levying taxes to defray the necessary expenditures of the jurisdiction, have no implied authority to issue negotiable securities, payable in future, of such a character as to be unimpeachable in the hands of *bona fide* holders, for the purpose of raising money or funding a previous indebtedness. In the opinion of the court, delivered by Mr. Justice Bradley, it is stated that the police jury of the parish of Tensas, Louisiana, which issued the negotiable bonds in question in that case, had no express authority to issue them; that the power could not be implied from the ordinary powers of local administration and police which were conferred upon the boards and trustees of political districts; that it was one thing for county and parish trustees to have the power to incur obligations for work actually done in behalf of the county or parish, and to give proper vouchers therefor, and a totally different thing to have the power of issuing unimpeachable paper obligations, which might be multiplied to an indefinite extent; and that, although the authority for such bodies to issue negotiable paper might be implied in some cases from other and express powers granted, those implications should not be extended beyond the fair inferences to be gathered from the circumstances of each case.

In *Claiborne County* v. *Brooks*, 111 U. S. 400, it was held that the power to issue commercial paper was foreign to the objects of the creation of the political divisions of counties and townships, and was not to be conceded to such organizations unless by virtue of express legislation or by very strong implication from such legislation; and that the power conferred by statutes of Tennessee upon a county, to erect a court-house, jail and other necessary county buildings, did not authorize the issue of commercial paper as evidence of or security for a debt contracted for the construction of such a building. The opinion in the case was delivered by Mr. Justice Bradley; and the case of *Police Jury* v. *Britton*, 15 Wall. 566, was cited and approved, although the unsuccessful

party cited as authority the case of *Rogers* v. *Burlington*, 3 Wall. 654.

In *Concord* v. *Robinson*, 121 U. S. 165, it was held that a grant to a municipal corporation of power to appropriate moneys in aid of the construction of a railroad, accompanied by a provision directing the levy and collection of taxes to meet such appropriation, and prescribing no other mode of payment, did not authorize the issuing of negotiable bonds in payment of such appropriation. The opinion of this court was delivered by Mr. Justice Harlan, and the case of *Claiborne County* v. *Brooks*, 111 U. S. 400, was cited and approved.

In *Kelley* v. *Milan*, 127 U. S. 139, and *Norton* v. *Dyersburg*, 127 U. S. 160, it was held that the power granted to a municipal corporation to become a stockholder in a railroad company did not carry with it the power to issue negotiable bonds in payment of the subscription, unless the latter power was expressly or by reasonable implication conferred by statute. In the opinion in the case of *Norton* v. *Dyersburg*, the case of *Claiborne County* v. *Brooks*, 111 U. S. 400, was cited with approval.

In *Young* v. *Clarendon Township*, 132 U. S. 340, it was held to be settled law that a municipality has no power to issue its bonds in aid of a railroad, except by legislative permission; and in the opinion of the court, delivered by Mr. Justice Lamar, the cases of *Claiborne County* v. *Brooks* and of *Kelley* v. *Milan* were cited and approved.

In *Hill* v. *Memphis*, 134 U. S. 198, 203, the opinion of the court being delivered by Mr. Justice Field, it was held that the power conferred by a statute on a municipal corporation to subscribe for the stock of a railroad company did not include the power to issue negotiable bonds representing a debt, in order to pay for that subscription; and it was said that that rule was well settled. It was added: " The inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers, has been affirmed in repeated decisions of this court;" and the cases of *Police Jury* v. *Britton*,

*Claiborne County* v. *Brooks,* *Kelley* v. *Milan* and *Young* v. *Clarendon Township* were cited with approval.

In *Merrill* v. *Monticello,* 138 U. S. 673, 687, 691, it was held that the implied power of a municipal corporation to borrow money to enable it to execute the powers expressly conferred upon it by law, if existing at all, did not authorize it to create and issue negotiable securities to be sold in the market and to be taken by the purchaser freed from the equities that might be set up by the maker; and that to borrow money, and to give a bond or obligation therefor which might circulate in the market as a negotiable security, freed from any equities that might be set up by the maker of it, were essentially different transactions in their nature and legal effect. In the opinion of the court, which was delivered by Mr. Justice Lamar, the cases of *Police Jury* v. *Britton, Claiborne County* v. *Brooks, Kelley* v. *Milan, Young* v. *Clarendon Township* and *Hill* v. *Memphis* were cited with approval. It was added: "It is admitted that the power to borrow money, or to incur indebtedness, carries with it the power to issue the usual evidences of indebtedness, by the corporation, to the lender or other creditor. Such evidences may be in the form of promissory notes, warrants, and, perhaps, most generally, in that of a bond. But there is a marked legal difference between the power to give a note to a lender for the amount of money borrowed, or to a creditor for the amount due, and the power to issue for sale, in open market, a bond, as a commercial security, with immunity, in the hands of a *bona fide* holder for value, from equitable defences. The plaintiff in error contends that there is no legal or substantial difference between the two; that the issuing and disposal of bonds in market, though in common parlance, and sometimes in legislative enactment, called a sale, is not so in fact; and that the so-called purchaser who takes the bond and advances his money for it is actually a lender, as much so as a person who takes a bond payable to him in his own name."

The opinion then stated that the logical result of the doctrines announced in the five cases which it cited clearly showed that the bonds sued on in the case of *Merrill* v. *Mon-*

*ticello* were invalid, and added: "It does not follow that, because the town of Monticello had the right to contract a loan, it had, therefore, the right to issue negotiable bonds and put them on the market as evidences of such loan. To borrow money, and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in their legal effect, essentially different transactions. In the present case, all that can be contended for is, that the town had the power to contract a loan, under certain specified restrictions and limitations. Nowhere in the statute is there any express power given to issue negotiable bonds as evidence of such loan. Nor can such power be implied, because the existence of it is not necessary to carry out any of the purposes of the municipality. It is true that there is a considerable number of cases, many of which are cited in the brief of counsel for plaintiff in error, which hold a contrary doctrine. But the view taken by this court in the cases above cited and others seems to us more in keeping with the well recognized and settled principles of the law of municipal corporations."

We, therefore, must regard the cases of *Rogers* v. *Burlington* and *Mitchell* v. *Burlington*, as overruled in the particular referred to, by later cases in this court. See 1 Dillon's Mun. Cor. 4th ed. §§ 507, 507 *a*.

The case of *Dwyer* v. *Hackworth*, 57 Tex. 245, is relied upon by the plaintiff. In that case, Dwyer, a taxpayer, brought suit against Hackworth, assessor and collector of taxes of the city of Brenham, to enjoin the collection of certain taxes assessed against Dwyer, to pay the interest on the bonds involved in the present suit. In the District Court of Washington County, Texas, in which the suit was brought, the defendant had judgment, sustaining the legality of the taxes and dismissing the plaintiff's suit. The case was carried by the plaintiff to the Supreme Court of Texas, and in the opinion of that court it is said that the city of Brenham had authority under its charter to borrow money for general purposes, "and did so borrow, by selling its bonds, to the amount

of $15,000." This expression is urged by the plaintiff as recognizing the lawfulness of the issue of the bonds; but the court, while reversing the judgment below, said that it could not enjoin the collection of the taxes on the ground of the invalidity of the bonds, without making the holders of those bonds parties to the suit, citing *Board* v. *Railway Co.*, 46 Texas, 316. There was, therefore, no adjudication in that case as to the validity of the bonds, and the remark of the court that the city borrowed money by selling its bonds to the amount of $15,000 is of no force on the question of the validity of the bonds. *Lewis* v. *City of Shreveport*, 108 U. S. 282, 287.

It is also to be remarked that the ordinance of June 7, 1879, provided that the city should have the right to redeem the bonds " at any time after five years from date," while each bond on its face states that it is redeemable by the city " after the expiration of ten years from date hereof." The officers of the city had no power to depart from the terms of the ordinance by varying the time limited for redemption.

We see nothing in the provisions of the constitution of Texas of 1876, before cited, to aid the power of the city to issue these negotiable bonds.

We cannot regard the provision in the charter of the city, that bonds of the corporation of the city " shall not be subject to tax under this act," as recognizing the validity of the bonds in question. Whatever that provision may mean, it cannot include bonds unlawfully issued.

As there was no authority to issue the bonds, even a *bona fide* holder of them cannot have a right to recover upon them or their coupons. *Marsh* v. *Fulton County*, 10 Wall. 676; *East Oakland* v. *Skinner*, 94 U. S. 255; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Hayes* v. *Holly Springs*, 114 U. S. 120; *Daviess County* v. *Dickinson*, 117 U. S. 657; *Hopper* v. *Covington*, 118 U. S. 148, 151; *Merrill* v. *Monticello*, 138 U. S. 673, 681, 682.

As the action here is directly upon the coupons, and there is no right of recovery upon them, the judgment must be

*Reversed, and the case remanded to the Circuit Court, with a direction to sustain the defendant's general demurrer and special demurrer and exceptions to the plaintiff's original petition, and to sustain the special exceptions and demurrers of the defendant to the plaintiff's supplemental petition, and to enter judgment thereon in favor of the defendant and dismissing both of said petitions, with a general judgment for the defendant.* [See p. 549, *post.*]

Mr. Justice HARLAN, with whom concurred Mr. Justice BREWER and Mr. Justice BROWN, dissenting.

Mr. Justice BREWER, Mr. Justice BROWN and myself being unable to concur in the opinion just rendered, the grounds of our dissent will be stated.

The charter of the city of Brenham, granted in 1873, provided that " the city council shall have the power and authority to *borrow*, for general purposes, not exceeding fifteen thousand dollars, on the credit of said city ; " also, that the " *bonds* of the corporation of the city of Brenham shall not be subject to tax under this act." Special Laws of Texas, pp. 14 and 23.

Under the authority conferred by this charter the city council in 1879 passed an ordinance, entitled, " An ordinance to provide for the issue and sale of fifteen thousand dollars in coupon bonds of the city, to *borrow* money for general purposes." Bonds, negotiable in form, and to the full amount authorized by the ordinance, were issued by the city in 1879, and the coupons held by the German-American Bank were from the bonds so issued. The court does not hold that the issuing of these bonds was in violation of the constitution of Texas adopted in 1876. But it does hold that, while the city, under its power to borrow, could give to the lender non-negotiable paper as a " voucher " for the repayment of the money borrowed, it could not legally issue negotiable instruments or bonds as evidence of the loan. This view is conceded to be in conflict with *Rogers* v. *Burlington*, 3 Wall. 654, and *Mitchell* v. *Burlington*, 4 Wall. 270. But it is said that later

adjudications of this court have, in effect, overruled those cases. We cannot give our assent to the doctrine announced in the present case. Nor — we submit with some confidence — is that doctrine sustained by any decision of this court which has been cited.

What was the case of *Rogers* v. *Burlington?* Besides the general powers appertaining to municipal corporations, the city of Burlington had *express* power, by its charter, " to borrow money for any public purpose," the matter being first submitted to popular vote. The people having voted, by the requisite majority, in favor of issuing and lending $75,000 in the bonds of the city to a particular railroad company, bonds for that amount, negotiable in form, were issued. The court held the construction of a railroad to be a public purpose, within the meaning of the charter of the city, and that it made no difference whether the bonds were sold in the market by the officers of the municipality, or were first delivered to the company and sold by its agents for the same purpose. " Technically speaking," the court observed, " it may be said that the transaction, as between the company and the defendants, was, in form, a contract of lending; but as between the defendants and the persons who purchased the bonds in the market it was undeniably a contract of borrowing money; and the same remark applies to the transaction in its practical and legal effect upon all subsequent holders of the securities who have since become such for value, and in the usual course of business."

The minority dissented, not upon the ground that an express power in a municipal corporation to borrow money did not give authority to execute negotiable instruments for the money borrowed — although that question was upon the very face of the case — but upon the ground that the transaction was not one of borrowing money. Mr. Justice Field, speaking for the minority, said : " Here the authority conferred is to *borrow money ;* yet no money was borrowed, but the bonds of the city were lent. Borrowing money and lending credit are not convertible terms. The two things which they indicate are essentially distinct and different." Mr. Justice Mil-

ler, in a separate dissenting opinion, called attention to the fact that the Supreme Court of Iowa had then recently held the bonds, involved in that suit, to be void, upon the ground that the transaction " was a loan of credit, and not a borrowing of money." The principle announced in *Rogers* v. *Burlington* was applied in *Mitchell* v. *Burlington*, 4 Wall. 270.

The cases, decided since *Rogers* v. *Burlington*, which have been cited, in the opinion of the court, as announcing the doctrine that an express power given to a municipal corporation to borrow money does not authorize the execution of negotiable instruments for the money so borrowed, are: *Police Jury* v. *Britton*, 15 Wall. 566, 570, 572; *Claiborne County* v. *Brooks*, 111 U. S. 400, 406; *Concord* v. *Robinson*, 121 U. S. 165, 167; *Kelley* v. *Milan*, 127 U. S. 139, 150; *Norton* v. *Dyersburg*, 127 U. S. 160, 175; *Young* v. *Clarendon*, 132 U. S. 340; *Hill* v. *Memphis*, 134 U. S. 198, 203; and *Merrill* v. *Monticello*, 138 U. S. 673, 686, 687.

In *Police Jury* v. *Britton*, it appeared that a police jury, in a parish of Louisiana, charged with the supervision and repair of roads, bridges, causeways, dikes, levees and other highways, was prohibited by statute from contracting any debt or pecuniary liability without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt so contracted. And the question arose as to whether it could rightfully issue negotiable bonds to take the place of certain orders previously given by it for work done on levees in the parish. The case involved no question as to the scope and effect of an *express* power in the parish *to borrow* money. Mr. Justice Bradley, speaking for the court, after observing that the police jury had no express authority to issue bonds, and that, if it existed, it must be *implied* from the general powers of local administration with which they were invested, said: " We have, therefore, the question directly presented in this case whether the trustees or representative officers of a parish, county or other local jurisdiction, invested with the usual powers of administration in specific matters, and the power of levying taxes to defray the necessary expenditures of the jurisdiction, have an implied authority to

issue negotiable securities, payable in future, of such a character as to be unimpeachable in the hands of *bona fide* holders, for the purpose of raising money or funding a previous indebtedness?" This question was answered in the negative. But, to prevent any possible misapplication of the principles announced, the court said: "We do not mean to be understood that it requires, in all cases, *express* authority for such bodies *to issue negotiable paper.* The power has frequently been *implied* from other *express* powers granted. Thus, it has been held that the power *to borrow* money *implies* the power to issue the ordinary securities for its repayment, *whether in the form of notes or bonds payable in future.*" It thus appears that *Police Jury* v. *Britton* distinctly declares that case not to be within the rule that an express power to borrow money carries with it authority to issue negotiable securities for the amount borrowed.

In *Claiborne County* v. *Brooks,* the question was whether the power in a county to contract for the erection of a courthouse implied authority to issue negotiable bonds of a commercial character in payment for the work. The court, speaking again by Mr. Justice Bradley, held that it did not, and said: "Our opinion is, that mere political bodies, constituted as counties are, for the purpose of local police and administration, and having the power of levying taxes to defray all public charges created, whether they are or are not formally invested with corporate capacity, have no power or authority to make and utter commercial paper of any kind, unless such power is expressly conferred upon them by law, *or clearly implied from some other power expressly given, which cannot be fairly exercised without it*" — referring to the same clauses in the opinion in *Police Jury* v. *Britton,* above quoted, as embodying a distinct expression of the views of the court.

In *Concord* v. *Robinson,* it was decided that "the grant to a municipal corporation of power *to appropriate moneys* in aid of the construction of a railroad, *accompanied* by a provision directing the levy and collection of taxes to meet *such appropriation, and prescribing no other mode of payment,*" did not imply authority to issue negotiable bonds on account of such

appropriation; in *Kelley* v. *Milan*, that "a municipal corporation, in order to exercise the power of becoming *a stockholder in a railroad corporation*, must have such power expressly conferred upon it by a grant from the legislature, and that even the power to subscribe for such stock does not carry with it the power to issue negotiable bonds in payment of the subscription, unless the power to issue such bonds is expressly *or by reasonable implication conferred by statute;*" in *Norton* v. *Dyersburg*, that "the mere authority given to a municipality *to subscribe for stock* in a railroad company did not carry with it the implied power to issue bonds therefor, especially where, as in the present case, special provisions were made for paying the subscription by taxation;" in *Young* v. *Clarendon Township*, authority to make the municipal bonds there involved was conceded, and the case turned upon the question, whether their execution was not subject to the restrictions and directions of the act which authorized them to be issued; and in *Hill* v. *Memphis*, that "the power *to subscribe for stock* does not of *itself* include the power to issue bonds of a town in payment of it," and that "the inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given *or necessarily implied for the execution of other express powers*, has been approved in repeated decisions of this court."

It thus appears that in no one of the above cases, decided since *Rogers* v. *Burlington*, was there any question as to negotiable securities being issued under an *express* power to *borrow* money; and that some of them concede that such a power carries with it authority to give a negotiable paper for money borrowed.

The case which seems to be much relied upon to support the present judgment is *Merrill* v. *Monticello*. But we submit that it does not sustain the broad doctrine that negotiable securities may not be issued in execution of an *express* power to *borrow money*. What could or could not be done, under such a power, was not a question involved in that case. The question was whether authority in the town of Monticello to issue negotiable bonds could be *implied*, not from an express,

but from an *implied* power to borrow money. After observing that, under the laws of Indiana, the proposition that a town has an *implied* authority to borrow money, or contract a loan, under the conditions, and in the manner expressly prescribed, was not to be controverted, the court, speaking by Mr. Justice Lamar, said: "But this only brings us back to the question, Does the *implied* power *to borrow* money or contract a loan carry with it *a further implication* of power to issue funding negotiable bonds, for that amount, and sell them in open market?" The question in that case, as framed by the court, clearly shows that it was only considering whether an authority in a municipal corporation to issue negotiable securities could be *implied* from a power to borrow which was *itself* to be *implied* from other powers granted. This, also, appears from the following clause in the opinion: "It is admitted that the power to *borrow* money, or to incur indebtedness, *carries with it* the power to issue *the usual evidences of indebtedness*, by the corporation, to the lender or other creditor. Such evidences may be in the form of *promissory notes, warrants, and perhaps, most generally, in that of a bond.*" And it is further shown by the fact that the opinion, referring to the clause in *Police Jury* v. *Britton,* above quoted, which states that authority in a municipal corporation to issue negotiable securities may be implied from an *express* power to *borrow* money, states that it has no application to the case then before the court, in which the attempt was made to *imply* authority to issue negotiable bonds simply from an *implied* power *to borrow money.*

Another case in this court, not referred to, is very much in point. It is *City of Savannah* v. *Kelly,* 108 U. S. 184, 190. A railroad corporation, whose principal and beginning point was that city, issued its negotiable bonds upon which to raise money to pay debts for construction, and for future improvements. The city, owning some of the capital stock of the corporation, guaranteed the payment of those bonds. The bonds, so guaranteed, were put upon the market and sold. The question was as to the authority of the city to make this guaranty under the power conferred upon it by an act of the legislature,

"to obtain money on loan, on the faith and credit of said city, for the purposes of contributing to works of internal improvements." Mr. Justice Matthews, speaking for the court, said that the fact that the money "was not advanced directly to the city, but, upon its assurance of repayment, to the railroad company, is not a departure even from the letter of the law, much less from its meaning; nor does the fact that the money was advanced partly on the credit of the railroad company diminish the presumed reliance of the purchaser upon that of the city, with which it was joined. It is difficult to conceive of language more comprehensive than that employed, to embrace *every form of security in which the faith and credit of the city might be embodied;* and that in such cases it is not important to the character of the transaction that the money is obtained in the first instance by the railroad company, upon the credit of the city, was directly ruled in *Rogers* v. *Burlington*, 3 Wall. 654, and affirmed in *Town of Venice* v. *Murdock*, 92 U. S. 494." Of course, if the city of Savannah, having the power "to obtain money on loan," could guarantee negotiable bonds, issued by the railroad company for the purpose of raising money to be contributed to works of internal improvement in which the city was interested, the city could have made the loan directly upon its own negotiable bonds.

It is, perhaps, proper to say that our views find support in the admirable commentaries of Judge Dillon on the Law of Municipal Corporations. The court refers to sections 507 and 507 *a* of those Commentaries. But those sections do not, in any degree support the conclusion reached in this case. The doctrine which the learned author declares, in those sections, to be alike unsound and dangerous, is, "that a public or municipal corporation possesses the *implied power* to borrow money for its ordinary purposes, and as *incidental* thereto the power to issue commercial securities, that is, paper which cuts off defences when it is in the hands of a holder for value acquired before it is due." But Judge Dillon, while agreeing that the power to issue commercial paper, unimpeachable in the hands of a *bona fide* holder, is not among the ordinary *incidental* powers of a public municipal corporation, and must be con-

ferred expressly, or by fair implication, says, after a careful review of the authorities: "*Express power to borrow money*, perhaps, in all cases, but especially if conferred to effect objects for which large or unusual sums are required, as, for example, subscriptions to aid railways and other public improvements, will ordinarily be taken, if there be nothing in the legislation to negative the inference, to include the power (the same as if conferred upon a corporation organized for pecuniary profit) to issue negotiable paper with all the incidents of negotiability." 1 Dillon's Mun. Corp. § 125, 4th ed. It is eminently just to apply that rule in the present case, because the act giving the city of Brenham authority to borrow, not exceeding $15,000, for general purposes, expressly provided that its *bonds* should not be subject to tax under that act. Such a provision could have had reference only to negotiable bonds, which would be put upon the market for the purpose of raising money.

It seems to us that the court, in the present case, announces for the first time that an express power in a municipal corporation, to borrow money, for corporate or general purposes, does not, under any circumstances, carry with it, by implication, authority to execute a negotiable promissory note or bond for the money so borrowed, and that any such note or bond is void in the hands of a *bona fide* holder for value. There are, perhaps, few municipal corporations anywhere that have not, under some circumstances, and within prescribed limits as to amount, express authority to borrow money for legitimate, corporate purposes. While this authority may be abused, it is often vital to the public interests that it be exercised. But if it may not be exercised by giving negotiable notes or bonds as evidence of the indebtedness so created — which is the mode usually adopted in such cases — the power to borrow, however urgent the necessity, will be of little practical value. Those who have money to lend will not lend it upon mere vouchers or certificates of indebtedness. The aggregate amount of negotiable notes and bonds, executed by municipal corporations, for legitimate purposes, under express power to borrow money simply, and now outstanding in every part of the country, must be

enormous. A declaration by this court that such notes and bonds are void, because of the absence of *express* legislative authority to execute *negotiable* instruments for the money borrowed, will, we fear, produce incalculable mischief. Believing the doctrine announced by the court to be unsound, upon principle and authority, we do not feel at liberty to withhold an expression of our dissent from the opinion.